UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIN CARL MARTIN,                                Civil Action No. 14-10254

    Plaintiff,                                             HON. GERALD E. ROSEN
                                                              U.S. District Judge
v.                                                                HON. R. STEVEN WHALEN
                                                              U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Darin Carl Martin ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below I recommend that Defendant's motion be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded to for further administrative proceedings.

**PROCEDURAL HISTORY**

On December 3, 2010, Plaintiff filed applications for DIB and SSI, alleging disability as of November 28, 2009[1] (Tr. 197-198, 204-209). After the initial denial of the claim, he requested an administrative hearing, held on May 24, 2012 in Detroit, Michigan before Administrative Law Judge ("ALJ") Gregory Holiday (Tr. 28). Plaintiff, represented by attorney Steven Harthorn, testified (Tr. 32-64), as did Vocational Expert ("VE") Diane Regan (Tr. 64-70). On August 27, 2012, ALJ Holiday found Plaintiff not disabled (Tr. 12-23). On November 27, 2013, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on January 20, 2014.

**BACKGROUND FACTS**

Plaintiff, born March 12, 1970, was 42 when the ALJ issued his decision (Tr. 23, 197). He completed high school and received vocational training in mechanical drafting (Tr. 232). He worked previously as a graphic designer and mechanical designer/fixture checker (Tr. 232). His application for benefits alleges disability as a result of cervical and lumbar spine injuries creating pain and numbness, depression, and sleeping problems (Tr. 231).

A.    **Plaintiff's Testimony**

Plaintiff offered the following testimony:

---

[1] Plaintiff filed an earlier claim for benefits which was denied on November 27, 2009 (Tr. 104). The Residual Functional Capacity determined by the ALJ Holiday is more restrictive than the one stated in the November 27, 2009 opinion but is not preclusive of all work (Tr. 16-17, 99).

In the year before the hearing, he lost 13 pounds due to appetite loss (Tr. 32). Since the alleged onset of disability date, he had attempted to coach little league football but was unable to meet the standing and walking requirements of the position (Tr. 33). His body pain, tremors, and concentrational problems had become progressively worse since November 27, 2009 (Tr. 34). He experienced modest improvement while engaged in physical therapy, but noted that his "leg dragging" had increased (Tr. 34). His condition had deteriorated since he was forced to stop therapy due to the loss of insurance (Tr. 35). He continued to perform exercises at home (Tr. 35).

Plaintiff was able to make simple meals on an occasional basis (Tr. 36). He required his wife's help to bathe due to his inability to bend (Tr. 37). His ability to perform gross and fine manipulations was impaired by shoulder and neck pain (Tr. 37-38). He smoked approximately 12 cigarettes each day (Tr. 38). He no longer drank alcohol, but noted that he had previously used alcohol to control his pain (Tr. 38-39). Because he was uninsured, he had decided to forego aggressive medical care for the time being (Tr. 39). He was currently taking Percocet, Zoloft, Neurontin, and Mirtazapine, all of which had been prescribed by a family physician (Tr. 40). He declined to use a walking aid due to the added pressure on his neck (Tr. 42).

Plaintiff lived in a two-story bungalow with his wife and two children (Tr. 43). He generally stayed on the main floor of the house (Tr. 44). He did not use a computer at home but accessed his email from his cell phone (Tr. 45). He had a Facebook account and

uploaded photographs to Facebook from his cell phone (Tr. 45). He used his cell phone for texting (Tr. 46). He had used marijuana in an unsuccessful attempt to increase his appetite but had not used it in the last two months (Tr. 47). His vision was "okay" (Tr. 48). Turning his neck created back pain (Tr. 48). He was unable to turn his neck more than 10 degrees in either direction (Tr. 49). He relieved back pain by reclining with his legs raised (Tr. 49). He did not experience problems interacting with neighbors or other acquaintances (Tr. 50-51). He watched television for less than an hour each day (Tr. 51). Plaintiff, right handed, experienced worse shoulder pain, tremors, and foot drag on the right (Tr. 52). He was unable to lift his right arm above shoulder level or reach forward (Tr. 52). He was able to lift and carry a gallon of milk (Tr. 53).

Plaintiff's back condition was hereditary (Tr. 54). He had been told that the condition would continue to deteriorate (Tr. 55). He had undergone two cervical fusions and a lumbar fusion (Tr. 55). Additional surgery had been recommended by multiple sources (Tr. 55). A recent MRI showed nerve root impingement of the cervical spine (Tr. 55). Steroid injections to the shoulder did not relieve his pain for more than four days (Tr. 56). Since undergoing cervical spine surgery, he experienced right forearm and hand numbness (Tr. 56). He was unable to sit for more than 40 minutes or stand for more than 15 (Tr. 57, 59). He was unable to walk for more than two blocks (Tr. 59). The right foot drop had been getting progressively worse since his last surgery (Tr. 58). Medication side effects included loss of appetite, confusion, and depression (Tr. 59). He experienced reading comprehension problems and

was easily distracted (Tr. 61).

On a typical day, Plaintiff would arise at 9:00 a.m., feed his dogs, then lie down intermittently for the rest of the day (Tr. 60). He had not received mental health treatment but was prescribed antidepressants by a family doctor (Tr. 60). He recently contemplated suicide due to his inability to provide for his family (Tr. 62). As of May 24, 2012, he had not had a blood "work up" for rheumatoid arthritis (Tr. 62).

    B.    Medical Evidence

### 1. Treating Records[2]

A May, 2007 MRI of the cervical spine showed a disc protrusion at C4/C5 and a "disc spur complex" at C5/C6 (Tr. 259). In June, 2008, Nilesh M. Patel, M.D. noted that a recent cervical laminectomy improved Plaintiff's left forearm pain but did not diminish left hand numbness (Tr. 305). August, 2008 records by Marc Milia, M.D. state that steroid injections to the left shoulder helped for one month (Tr. 303). In December, 2008, Dr. Milia performed a left rotator cuff repair (Tr. 332). February, 2009 treating notes by Dr. Milia state that Plaintiff's left shoulder condition had improved following decompression surgery (Tr. 266). March, 2009 treating records state that Plaintiff was currently taking Percocet for back pain and Xanax and Zoloft for anxiety and depression (Tr. 263).

In November, 2009, Lawrence A. Hansen, M.D. found that Plaintiff had been unable

---

[2] Medical records created prior to the alleged onset of disability date of November 28, 2009 are included for background purposes.

-5-

to work since September, 2009 due to cervical and lumbar fusion procedures (Tr. 292-294, 356-358). He found that Plaintiff was limited to turning his head, crouching, and squatting on a rare basis ; would be precluded from all stooping and climbing of ladders; and would be expected to miss more than four days of work each month (Tr. 290-291).

Dr. Hansen's December, 2010 records state that Plaintiff was currently taking Percocet and Zoloft (Tr. 269). In April, 2011, Dr. Hansen composed a letter, opining that Plaintiff would be unable to pay his electric bill due to neck and back problems (Tr. 361). Dr. Hansen's notes from May to July, 2011 show that Plaintiff continued to experience financial problems (Tr. 364). A September, 2011 MRI of the cervical spine showed nerve root effacement at C4/C5 but no evidence of stenosis (Tr. 354). In November, 2011, Dr. Milia administered a steroid injection to the right shoulder and ordered physical therapy after Plaintiff reported chronic shoulder pain (Tr. 328, 353). April, 2012 treating records by J. Alan Robertson, M.D. note Plaintiff's report of constant burning neck and back pain radiating into the extremities (Tr. 345). He reported relief by lying on a "hard floor" (Tr. 345). Dr. Robertson found that Plaintiff did not exaggerate his symptoms (Tr. 346). He diagnosed Plaintiff with postlaminectomy "pain syndrome/failed spine surgery" of both the cervical and lumbar spine (Tr. 349). He noted "little flexion strength" in the right upper extremity (Tr. 350). He found further that Plaintiff's concentrational abilities were compromised by the use of painkillers (Tr. 350). June, 2012 blood tests show that Plaintiff was positive for rheumatoid arthritis (Tr. 370-371).

### 2.   Consultative and Non-Treating Records

In May, 2011, Leonidas Rojas, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of upper and lower extremity pain and numbness (Tr. 296). Dr. Rojas observed a normal gait and "no significant difficulty standing up from a chair or getting on or off the examining table" (Tr. 296). Plaintiff demonstrated moderate neck and back tenderness but no tremors (Tr. 296). Dr. Rojas found the presence of chronic neck and back pain with mild right-sided radiculopathy in the upper and lower extremities (Tr. 296).

The same day, psychologist Terrance A. Mills performed a consultative examination, noting that Plaintiff had recently lost his job and ended his marriage (Tr. 299). Plaintiff admitted to drinking heavily (Tr. 299). Dr. Mills noted hand tremors, finding that alcohol, depression, and panic attacks had all contributed to Plaintiff's inability to work (Tr. 299). He opined that Plaintiff required professional help for alcohol dependence, depression, and anxiety (Tr. 299).

The same month, Kathy A. Morrow, Ph.D. found that Plaintiff experienced mild limitation in activities of daily living and social function, but moderate limitation in concentration, persistence, or pace (Tr. 121, 126). She found that Plaintiff's restrictions did not prevent him from performing "simple, unskilled work" (Tr. 123).

### C.   Vocational Expert Testimony

VE Diane Regan classified Plaintiff's former work as a graphics designer as skilled

at the sedentary exertional level[3] (Tr. 64, 257). The ALJ then posed the following question to the VE, describing a hypothetical individual of Plaintiff's age, education and work experience:

> [A]ssume a person . . . who's able to perform at not more than the sedentary exertional level with the following limitations: even though it's sedentary, he can lift no more than five pounds frequently and occasionally, in this hypothetical person. Also, the person requires a sit/stand option in order to perform work, no more than occasional pushing or pulling with the upper extremities, no more – no operation of foot controls or leg controls. The person can walk up to, up to one mile before a 15-minute rest; no more than occasional climbing of ladders, ropes, scaffolds; can no more than frequently climb ramps or stairs; no more than occasional stooping, kneeling, crouching; no twisting of [the trunk or] neck and only occasional flexing the neck, either sideways or upward; no more than occasional . . . overhead reaching and handling. No more than frequent fine manipulation bilaterally; work is limited to unskilled, routine tasks. Now, with those limitations, could such a hypothetical person perform Mr. Martin's past work? (Tr. 65-66).

The VE replied that given the above limitations, the individual would be unable to perform Plaintiff's former job but could perform the sedentary, unskilled work of a surveillance system monitor (800 jobs in the regional economy) and sorter (1,000) (Tr. 67).

The VE stated that if the same individual were additionally limited to "no pushing or pulling with the right upper extremity;" walking no more than four blocks; "brief stooping;"

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

"no overhead reaching and handling with the right upper extremity;" "no feeling with the pinkie and ring finger of the right hand;" and a preclusion on "production rate or production pace" jobs, the job of sorter would be eliminated (Tr. 67-68). He testified that the surveillance system monitor job numbers would remain unchanged (Tr. 68).

In response to questioning by Plaintiff's counsel, the VE testified that the inability to perform manual dexterity or the need to be off task for more than 20 percent of the workday would eliminate all competitive employment (Tr. 68-69).

### D. The ALJ's Decision

Citing the medical records, the ALJ found that Plaintiff experienced the severe impairments of osteoarthritis, degenerative disc disease of cervical and lumbar spine, depression, left shoulder disorder, rheumatoid arthritis, alcohol dependence and tobacco use disorder" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). He found mild restrictions in activities of daily living and social functioning and moderate deficiencies in concentration, persistence, or pace (Tr. 16). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional limitations:

> [C]laimant can lift no more than 5 pounds; requires a sit/stand option. the claimant cannot push or pull with the right upper extremity, cannot operate any foot or leg controls, can walk only up to 4 blocks with a 15-minute rest afterwards, can only occasionally climb ladders, ropes and scaffolds, but can frequently climb ramps and stairs. The claimant can only briefly (up to 10 % of the workday) stoop and only occasionally crouch or kneel. He cannot twist the trunk, and can only occasionally flex the neck sideways and upward. He

cannot perform any overhead reaching and handling with the right upper extremity, and cannot perform any fine manipulation with the right ring and pinky fingers. He is limited to unskilled, routine tasks, not performed at a production rate or production pace (Tr. 16-17).

The ALJ determined that while Plaintiff was unable to perform any of his past relevant work, he could work as a surveillance system monitor (Tr. 22).

The ALJ discounted Plaintiff's alleged degree of limitation (Tr. 18). The ALJ noted that an MRI of the cervical spine performed in September, 2011 was unchanged from a May, 2007 study (Tr. 18). He observed that while Plaintiff alleged depression, he had not sought treatment from a mental health professional (Tr. 18). The ALJ found that "there is not nearly enough medical evidence in the record to conclude that the new alleged rheumatoid arthritis impairment would meet or equal a listing . . ." (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en

banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# ANALYSIS

Plaintiff makes two arguments in favor of remand. *Plaintiff's Brief,* 14-18, *Docket #14.* First, he contends that the ALJ erred by declining to make a finding of disability at Step Three of the sequential analysis. *Id.* at 14-17. He also argues that the credibility determination failed to properly assess his allegations of pain. *Id.* at 17-18.

The question of whether the ALJ erred at Step Three of his analysis depends in significant part on whether the credibility determination was properly articulated and supported. As such, the Court considers Plaintiff's second argument first.

### A. The Credibility Determination

Plaintiff disputes the finding that his allegations of pain were not credible. He contends, in effect, that the ALJ failed to articulate supportable reasons for the credibility determination.

The credibility determination, guided by SSR 96-7p, describes the required two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.,* 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a

consideration of the entire case record."*Id.* [4] "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' " *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); See also *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

In support of the credibility determination, the ALJ stated that Plaintiff's testimony was inconsistent with the evidence of record (Tr. 17). He found that Plaintiff's claim that he required help bathing was contradicted by a May, 2011 statement to a consultative examiner indicating that he was capable of taking care of his personal needs (Tr. 17, 295-296). The ALJ found that Plaintiff's testimony that he did not socialize stood at odds with the ability to

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

upload pictures to a Facebook account (Tr. 17).

The ALJ's rationale for the credibility determination is followed by a discussion of the medical records in which he also impliedly rejects Plaintiff's allegations. The ALJ noted that a September, 2011 MRI of the cervical spine was mostly unchanged from a 2007 study (Tr. 18). He observed that although Plaintiff alleged depression, he had not received treatment from a mental health professional (Tr. 18). The ALJ noted that after steroid injections were administered in 2011, "[n]o additional tests were recommended . . ." (Tr. 18). The ALJ acknowledged the June, 2012 diagnostic tests consistent with a diagnosis of rheumatoid arthritis but found that "there is not nearly enough medical evidence in the record to conclude that the new alleged rheumatoid arthritis impairment would meet or equal a listing . . ." (Tr. 18).

A number of the ALJ's reasons for rejecting Plaintiff's credibility are only weakly supported by the record. The fact that Plaintiff reported in May, 2011 that he was capable of taking care of his grooming needs (but could not perform housework) does not by itself discredit his testimony twelve months later that he now required help bathing (Tr. 37, 295-296). Plaintiff's ability to use his cell phone to search the internet and upload photographs to Facebook does not undermine his claims that he is unable to work due to physical problems and did not socialize much due to depression (Tr. 45). *See Parks v. Commissioner of Social Sec.* 2014 WL 1305033, *10 (E.D.Mich.2014)(the fact that the claimant could "talk to her friends, take care of the family pets, drive, and perform household chores . . . for short

periods followed by a break" failed to show non-disability)(*citing Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir.1967) (claimant's ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not equate with the "ability to engage in substantial gainful activity"). Likewise here, Plaintiff's ability to feed his pet, upload photographs to Facebook, and prepare simple meals twice a week does not equate with the ability to work full time.

The ALJ also discredits Plaintiff's testimony by noting the absence of recent aggressive treatment (Tr. 18). However, both Plaintiff's testimony and the medical records show that his ability to seek proper treatment by was stymied by financial problems (including the loss of his home) and the lack of health insurance (Tr. 39, 299). Pursuant to SSR 96–7p, the ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."1996 WL 374186, *7 (1996). The administrative determination does not contain any indication that the ALJ considered the well documented financial constraints when noting that Plaintiff did not seek treatment from a mental health professional and did not obtain an evaluation for rheumatoid arthritis until 2012[5] (Tr. 18).

I also note that the ALJ placed inordinate emphasis on evidence supporting the non-

---

[5] Given a consultative psychological examiner's finding that Plaintiff indeed required mental health treatment, the ALJ's inference that Plaintiff did not seek treatment due to a lack of symtomology is particularly questionable (Tr. 299).

disability finding while minimizing or rejecting compelling evidence to the contrary. While the ALJ appeared to assign great import to a September, 2011 MRI of the cervical spine, he discounted June, 2012 diagnostic tests showing the presence of rheumatoid arthritis (consistent with Plaintiff's reports of unrelenting pain) because "there is not nearly enough medical evidence in the record to conclude that the new alleged rheumatoid arthritis impairment would meet or equal a listing . . ." (Tr. 18). First, the June, 2012 rheumatoid factor and Westergren sedimentary rate test results showing a likelihood of rheumatoid arthritis constitute "objective medical evidence" (Tr. 370). Second, the test results are accompanied by a diagnosis of rheumatoid arthritis by Dr. Robertson, a treating source (Tr. 351). The ALJ's "adoption" of Dr. Robertson's opinion is also of concern. Although the ALJ stated that he accorded "significant weight" to Dr. Robertson's opinion in crafting the RFC (Tr. 19), Dr. Robertson's opinion that there was "very little that [Plaintiff] was capable of accomplishing from a musculoskeletal perspective" suggests a greater level of limitation than that found in the RFC (Tr. 350). Further, while the ALJ found that Plaintiff overstated his limitations, Dr. Robertson found that Plaintiff was not exaggerating his symptoms or malingering (Tr. 346). Because the credibility determination fails to consider the impact of Plaintiff's financial problems on his ability to obtain health care, exaggerates the import of Plaintiff's intermittent activities, and ignores key portions of Dr Robertson's "adopted" opinion, a remand for further fact-finding is warranted.

### B. The Step Three Finding

The defective credibility determination is accompanied by additional errors. Plaintiff points out that while the ALJ found that the severe impairments of osteoarthritis, degenerative disc disease, and a left shoulder disorder did not meet a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App. 1, he failed to articulate his rational for finding that the spinal conditions did not meet or equal a listed impairment. *Id.,* § 1.04 ("Disorders of the Spine"). To sure, in some cases the ALJ's rationale for the Step Three finding can be cobbled together from various portions of the opinion. *See Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D.Tenn. Aug.8, 2011)(*citing Bledsoe v. Barhart*, 165 F. App'x 408, 411 (6th Cir. January 31, 2006)). However, here, the opinion does not include any of the listings for the physical conditions, much less the listing's criteria for disability at Step Three. *See Woolley v. Commissioner of Social Sec.*, 2014 WL 6612378, *5 (E.D.Mich. November 20, 2014)(remanded on the basis that "nowhere in his decision does the ALJ specify what [l]isting (or [l]istings) he purportedly considered. Nor does he explain why he concludes that Woolley's impairments do not meet or medically equal a [l]isted [i]mpairment").

Defendant argues that substantial evidence nonetheless supports the ALJ's finding that Plaintiff did not meet or equal a listed impairment. *Defendant's Brief, Docket #15,* 7; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. She points out that Listing 1.04 (pertaining to conditions of the spine) requires a diagnosis of one of a number of spinal conditions accompanied by nerve root compression, spinal arachnoiditis, or, "spinal stenosis resulting

in pseudoclaudication" accompanied by "the inability to ambulate effectively." *Id.* However, the omission of the applicable listing (much less why Plaintiff did not meet or equal it) requires a remand for clarification.

The critical Step Three omissions are not limited to the spinal conditions. In regard to the impairment of rheumatoid arthritis, the ALJ also found that "there [was] not nearly enough medical evidence in the record to conclude that the new alleged rheumatoid arthritis impairment would meet or equal a listing . . ." (Tr. 18). However, he does not state the criteria for disability on the basis of rheumatoid arthritis or even the applicable listing. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995). Given the objective evidence supporting the diagnosis of rheumatoid arthritis and Plaintiff's report of symptoms consistent with the disease, the ALJ's failure to articulate his reasons for finding that the condition neither met nor equaled a listed impairment prevents the Court from conducting a meaningful review of the Step Three findings.

For the reasons set forth above, a remand is required. However, the present transcript does not establish an "overwhelming" case for disability and the errors discussed herein do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). As such, I recommend a remand to the

administrative level for further fact-finding and reconsideration consistent with this Report.

## CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and that Plaintiff's motion for summary judgment be GRANTED to the extent that the case be remanded for further administrative proceedings.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: January 12, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 12, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager